THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant, *v.* ALEXANDER GEORGE, Appellee.

APPEAL FROM THE COMMON PLEAS OF THE CITY OF AURORA.

In an action for injuries sustained by a collision of railroad cars, where two companies run upon the same track, and a question arises as to which of the roads is in fault, the running time of trains may be shown, by other proof than the time table of the companies.

A person not a physician may testify, whether it was necessary for a party to receive medical assistance, and the length of time such assistance was necessary.

Carriers of passengers for hire, are bound to use the utmost care and diligence in providing for their safety. But, if the negligence of the passenger produces the injury, without the fault of the carrier, the carrier is not liable.

Railroad companies must adopt proper rules for the running of trains, and conform to them, or be responsible for all consequences.

Instructions not based upon evidence, should not be given.

The time at which trains should be run, may be proved otherwise than by the time table.

THIS was an action on the case, brought by the appellee, for injuries to his person, alleged to have occurred by the negligence of the appellant, in running its cars. The injury was alleged to have been occasioned by a collision between the cars of the Chicago, Burlington and Quincy train and the Galena train, at Wheaton, Du Page county, on the 27th of August, 1857.

The declaration is in the usual form, for negligence, and the plea, not guilty. The case was tried at the December term of the Common Pleas of the City of Aurora, Kane county, before GIBSON, Judge, and a jury. A verdict was rendered for the appellee for $1,300.

A motion for a new trial was made and overruled.

The principal grounds of error assigned, are,

The admission of incompetent evidence on the part of the appellee, and giving and refusing instructions by the court.

On the trial of this cause, the plaintiff introduced the following witnesses, who testified as follows:

*Horace H. Fuller.* The plaintiff's counsel asked the witness, " What time was the Galena and Chicago Union Railroad Company train due at that station ?" The defendant's counsel here interposed, and asked witness if he had any knowledge as to what time trains were due at that station, except what he obtained from the printed time cards or tables of the Galena and Chicago Union Railroad Company. The plaintiff objected to the question. The court sustained the objection, and refused to allow the question to be answered, stating that that could be ascertained on cross-examination ; to which ruling and decision of the court, in refusing to allow the question to be answered, the defendants, by their counsel, excepted. In answer to the plaintiff's question, the witness said, the Galena and Chicago Union Railroad train was due from the west at three o'clock and thirty or thirty-two minutes, P. M.; not certain which. The plaintiff then asked the witness, " What time was the Chicago, Burlington and Quincy train going west due at Wheaton ?" The defendant's counsel objected to the witness answering, if he had no other knowledge or information than that derived from the printed time table or cards. The court overruled the objection, and allowed the witness to answer. The witness answered, " The train was due at ten o'clock and forty minutes, A. M." The plaintiff's counsel then asked the witness, " Was you expecting a collision ?" To which questions the defendants objected ; the court overruled the objections, and allowed the questions to be put and answered ; to which ruling the defendants excepted. The witness answered, " I was, and was listening to hear it."

The plaintiff's counsel then asked the witness, " What is the regulation of those wild trains ?" The defendants objected to witness answering the question, if he had no other knowledge or information about the regulations except what he obtained from the printed card or table. The court overruled the objection, and allowed the question to be put and answered. The witness answered, " To keep out of the way of all regular trains."

On cross-examination, the witness said, " All that I know about the *rules and regulations of the running of trains* on the road, and the time when they are due at the station, I obtained from reading the printed time card of the Galena and Chicago Union Railroad Company, which governs the running of all trains on that road, east of the Junction, the time and manner of running all trains on that road, and the time card is made by the Galena and Chicago Union Railroad Company. All I have testified to about the time when trains were due at Wheaton, and about the regulations of the road, is from information obtained from the Galena and Chicago Union Railroad Company's time card. It was kept at the station, and I frequently examined it. Cannot tell how

long trains had been running on that time card. Not two months. The time table is often changed. Two or three changes have been made since August." The defendants then moved the court to exclude from the jury all the testimony given by said witness, in relation to the time and manner of running trains on the road, and the rules and regulations and time when trains were due at Wheaton station, according to said printed time card or table, from which he derived his information; which motion the court overruled. "There are from twelve to twenty rules on the time table."

*Joseph James,* a witness introduced by plaintiff. The plaintiff's counsel asked witness the following question: "Did you know the proper time you had to be at the switch?" To which question the defendants objected, which objection was overruled by the court, and the witness allowed to answer. The witness answered, "I know the time."

The plaintiff then asked the witness, "How many minutes was it after the Chicago, Burlington and Quincy train was at your switch before the Galena and Chicago Union Railroad train was due?" To which question the defendants, by their counsel, objected; which objection was overruled by the court, and the question allowed to be put and answered. The witness answered, "Two or three minutes."

On cross-examination, witness said, "I derive my information of the time trains were due at Wheaton, from the time card; had no other means of knowing. Had not examined the card that day; always went to the switch by the time on the card, and not from the direction of the station agent. The card I mean is the Galena Company time card. Had run a week, I should think, at the time on the card of that time, after the accident. The time of the trains of both roads is on the same table or card."

*Lewis C——,* a witness for plaintiff. The plaintiff's counsel asked the witness the following question: "Was it necessary for the physician to visit him as often as he did?" To which question the defendants, by their counsel, objected; which objection was overruled. The witness answered, "It was necessary."

On cross-examination, witness said, "I had no experience in taking care of sick persons."

The plaintiff asked the court to give the jury the following instructions, which was done, viz.:

No. 1. That if the jury believe, from the evidence, that the plaintiff was a passenger on board of the cars of the defendants, in the month of August last, and that the cars of the defendants came into collision with another train of cars, by reason of the negligence of the defendants or their agents, and that by reason

of such negligence the plaintiff was injured in person, they will find a verdict for the plaintiff, and assess his damages.

No. 2.    That if the plaintiff was injured by means of an accident on the said road of the defendants, while he was a passenger on their cars, the burden of proving that such accident was not the result of the negligence or unskillfulness of the defendants or their agents is cast upon the defendants.

No. 3.    That if the jury believe, from the evidence, that the plaintiff received an injury while riding on the cars of the defendants, by reason of a collision of said cars, that constitutes a *prima facie* case of negligence, and the defendants must rebut that presumption, in order to exonerate themselves; in other words, the burden of proof is upon the defendants, to show that they, by their agents and servants, did use due care and precaution.

No. 4.    That in estimating the damages which the plaintiff may have sustained, by reason of the injury complained of, the jury, if they find for the plaintiff, are not confined to such damages as may have resulted to the plaintiff by loss of time and expenses of medical attendance, but may give such additional damages, for the loss of the natural use of plaintiff's limbs, if anything, the pain and suffering, mental anguish, which the jury, exercising a sound discretion, may deem proper and just.

That if the jury believe, from the evidence, that the plaintiff was riding on the defendants' cars, as a passenger, to the place of collision, from Chicago, it is not necessary, to entitle the plaintiff to recover, to prove any payment of fare, under the last count in plaintiff's declaration.

No. 5.    That if the jury believe, from the evidence, that the plaintiff received injuries while on board the defendants' train of cars, while riding as a passenger from Chicago to Aurora, through the negligence of the defendants or their agents, then it is the duty of the jury to find a verdict for the plaintiff, in a sum that will compensate said plaintiff for all injuries sustained by him, either in broken bones, bruises, or lacerations, pains or sickness, and that the jury may take into consideration any damages that they may believe, from the evidence, the plaintiff may sustain or suffer thereafter, growing out of said injuries.

To the giving of which said instructions the defendants, by their counsel, at the time excepted.

The defendants then asked the court to instruct the jury as follows :

The jury must find for the defendants in this case, unless the plaintiff has proved that he was a passenger on the cars or train of the defendants, and received the injury complained of through the negligence or carelessness of the defendants, or persons in their employ.

If the jury believe, from the evidence, that the injury to the plaintiff was solely and entirely the result of accident, without the fault of the defendants, then the jury should find for the defendants.

If the jury believe, from the evidence, that the injury to the plaintiff was occasioned by circumstances over which the defendants had no control, then the jury should find for the defendants.

If the jury believe, from the evidence, that the plaintiff's own negligence, or want of care, contributed to the injury which he sustained, on the occasion of the collision, then the jury should find for the defendants.

That unless the plaintiff has proved that the injury complained of was occasioned by the negligence or carelessness of the defendants, or their servants, and also, that the said plaintiff was not guilty of any carelessness or negligence on that occasion, then the jury should find for the defendants.

If the jury believe, from the evidence, that the injury to the plaintiff was occasioned by the negligence or want of care of the Galena and Chicago Union Railroad Company, or their agents or servants, over whom the defendants had no control, then the jury should find for the defendants.

If the jury believe, from the evidence, that both parties were guilty of negligence or want of care, then they should find for defendants.

The jury are instructed, in considering this case, to disregard the testimony of the witnesses, Fuller and James, in reference to the time at which the various trains were due at the Wheaton station, according to the printed time cards, mentioned by said witnesses.

Unless the jury believe, from the evidence, that the defendants' train of cars, at the time of the collision, was not entitled to the road, then they should find for the defendants.

If the jury believe, from the evidence, that the Galena and Chicago Union Railroad Company had the sole control and regulation of the time and manner of running all trains on the road where the accident occurred, and that the defendants' train at that time was run according to such established rules and regulations, and that the collision was occasioned by, or was the result of following such rules or regulations, by the defendants or their servants, on that occasion, then the Galena and Chicago Union Railroad Company are liable for such injury, and the jury should find for the defendants.

Which the court refused, but gave Nos. 1 and 2, amended or qualified as follows:

1. If the jury believe, from the evidence, that the plaintiff's own negligence or want of proper care caused the injury which

he sustained, on the occasion of the collision, then the jury should find for the defendants.

2. That unless the plaintiff has proved that the injury complained of was occasioned by the negligence or carelessness of the defendants or their servants.

To which decision of the court, in refusing said instructions, as asked, and amending or qualifying any of the same, the defendants, by their counsel, excepted.

I. N. ARNOLD and W. B. PLATO, for Appellant.

LELAND & LELAND and PARKS & FRIDLEY, for Appellee.

WALKER, J. This was an action on the case brought by George against the Chicago, Burlington and Quincy Railroad Company, for injuries to his person, which were alleged to have been received by the negligence of the railroad company in running their cars. The injury was occasioned by a collision between the cars of the Galena and Chicago Union Railroad Company and the Burlington, Chicago and Quincy Railroad Company, near Wheaton, in Du Page county, on the 27th of August, 1857. The declaration is for negligence, and is in the usual form. The defendants plead the general issue, and the case was tried at the December term, 1857, by the Court of Common Pleas of the city of Aurora, and a jury. The jury found a verdict for plaintiff for the sum of $1,300. Defendants entered a motion for a new trial, which was overruled by the court, and judgment was rendered on the verdict, from which defendant appeals to this court.

It is urged that the court below erred in permitting witnesses to testify to the time the trains were due at Wheaton, when there was a time table at that place, and the witnesses testified they had got their information of when the trains were due from that time table. The issue to be determined was, whether the defendant was in fault; and it was pertinent to that issue to know when the several trains were due at that place. This was a fact to be established, and it might be done in either of several ways. It might be proven by the admissions of the defendant, or by proving that the trains had regularly arrived at that point, at a particular time, before this collision; and it might have been proven by producing and laying the proper foundation for the admission of this time table. The question was not what was the contents of this printed paper, but when should the cars have arrived at that point. The witnesses testify that the defendant's train from the east was due at ten o'clock and forty minutes in the forenoon, and the Galena train,

from the west, was due at three o'clock and thirty or thirty-two minutes in the afternoon, and that, for some time previous to the collision, they had run to their time. When it is proven that the trains of the two companies using this road had previously arrived regularly at a particular time, the conclusion is irresistible that they had been running according to their regulations. It was, by such evidence, as satisfactorily proven as it could have been by producing the time table. The plaintiff was not a party to the contents of that paper, and it, at most, was only a printed statement, made by defendant, and as such, plaintiff was not bound to rely upon it as evidence. The written statement of facts, by a party to the suit, is not admissible as evidence, unless the opposite party makes it evidence ; and if the other party sees proper to prove the fact without using such written statement, he has no right to complain. The witnesses' statements that they derived their information from the time table, was a mere inference, which the other portions of their evidence show to have been such. They testify that they were employees of the road at this place, and that the trains previously had arrived regularly at the times named, and their inferences should not be received to the exclusion of the facts testified to by them.

It was urged that the witness Lewis was improperly permitted to testify whether it was necessary for the physicians to have continued their attendance on plaintiff as long as they did. Even if this was a question of skill, the physicians had testified to having attended on plaintiff, and from that testimony, the inference is raised that it was necessary. But, in a question of this kind, any person of intelligence is capable of judging of the necessity of medical advice and services. It is universally acted upon by all classes of mankind, and we are not disposed to lay down a rule that none but a physician is competent to prove that a person is sick, or so sick as to require medical advice. When it comes to determine the nature or the effects of disease, it is different. These are scientific questions that none but those skilled in the science are competent to determine.

Numerous errors are assigned for refusing to give instructions asked by defendant of the court below. To determine the correctness or incorrectness of the judgment of the court in refusing to give the instructions, it will be necessary to advert to the facts proven on the trial of the case. It appears, from the evidence, that the defendant and the Galena and Chicago Union Railroad Company used this portion of the road jointly ; that the plaintiff was a passenger on the defendant's cars, and was injured by having his collar bone broken, etc. ; that this train of defendant's was due from the east at ten o'clock and forty minutes in the forenoon, and that the Galena train was

due from the west at three o'clock and thirty or thirty-two minutes in the afternoon; that the Galena train was due at Wheaton in two or three minutes after the defendant's train passed that point; that when the collision occurred, the switch tender was expecting and listening for the collision. The evidence showed that plaintiff was in the front part of the forward passenger car when he received the injury complained of, and this is the only evidence as to how the plaintiff acted, or what he did, at the time he was injured. The rule is well settled, and universally acquiesced in, that common carriers of property are held liable for all accidents and injuries it may receive, except from the acts of God and the enemy of the country. And it seems to be the rule that carriers of passengers for hire are bound to use the utmost care and diligence in providing for their safety, by the use of sufficient and suitable modes of conveyance, in order to prevent those injuries which human care and foresight can guard against. Having thus provided the means of transportation, they are, in like manner, to use the utmost care and diligence in managing, directing and using those means, so that, as far as human care and foresight can go, they may guard against injury. Having done all that human care and foresight can do reasonably, and injury happening, they are not liable. Pure accidents will excuse them. They are not liable at all events, and the negligence of the passenger producing the injury, without their fault, will also relieve them from liability. But the magnitude of the value of human life is such that it requires of carriers of passengers this degree of care and foresight. This view of their liability will be found to be supported by the cases of *Christie* v. *Briggs,* 2 Camp. R. 79; *Asten* v. *Heeren,* 2 Esp. R. 533; *Ingalls* v. *Bills,* 9 Mitch. R. 1; *Caldwell* v. *Murphy,* 1 Duer R. 233. When, by the increased facilities for travel, so large a portion of the population of our country are entrusted to the care of carriers of passengers by railroads and steamboats, and accidents are so lamentably frequent, it would not be proper to relax this rule, for upon it depends the safety of the traveling public.

It was the duty of these defendants to have adopted such rules and regulations for the running their trains as would insure safety, and having adopted them, they must conform to them, or be responsible for all consequences resulting from a departure from them. The evidence shows that the defendants' train was running several hours out of time when the collision occurred. They, in doing so, must have known the hazard they run, and that the other train, without a mere chance, would be on the road at the time and place where the collision occurred. And

the defendants, by so running, were, at the least, guilty of gross negligence, if the act was not willful.

They asked the court to instruct the jury that, if the injury was occasioned by the negligence of the Galena and Chicago Union Railroad Company, they would find for the defendants. This the court properly refused, as there was no evidence to base it upon. That company was running its train on time. The train was at the proper place on the road, and was in no fault. They asked the court to instruct the jury, that, if they believed, from the evidence, that both parties were guilty of negligence, or want of care, that they should find for the defendants. The court properly refused this instruction, as there was no evidence of negligence, or want of care, on the part of plaintiff. They asked the court to instruct the jury that, unless they believed, from the evidence, that defendants' train was not entitled to the road, when the collision occurred, they should find for the defendants. The court properly refused this instruction, as there was no evidence tending to show that they were entitled to the road, but all the evidence showed that they were not entitled to it when the collision occurred. They also asked the court to instruct the jury, that, if they believed, from the evidence, that the Galena and Chicago Union Railroad Company had the sole control and regulation of the time and manner of running all trains on the road where the accident occurred, and that defendants' train, at that time, was run according to such rules and regulations, and that it occurred by, or was the result of following such rules, that then the Galena and Chicago Union Railroad Company are liable, and they should find for defendants. This instruction was also properly refused. It assumed that the defendants were running on time when the collision occurred, when the evidence shows they were not, and there was not a particle of evidence tending to show they were running in conformity to the regulations of the road. To have given any of these instructions, would have tended to mislead the jury, and bring before them mere abstract propositions. The court did right in refusing them. Upon a careful examination of this whole record, we are unable to perceive any error; and the judgment of the court below should be affirmed.

*Judgment affirmed.*