## TRIPLETT *v.* RUGBY DISTILLING COMPANY.

Opinion delivered February 25, 1899.

| 66 | 219 |
|----|-----|
| 67 | 58  |
| 66 | 219 |
| 74 | 92  |

1. FRAUD—EVIDENCE—STATEMENT TO COMMERCIAL AGENCY.—In an action by a seller to rescind a sale of goods for fraud, a statement by the agent of the buyer who had control of the buyer's business, made in the line of his authority for the purpose of securing a commercial rating as the basis of credit, and tending to throw light upon the intent with which the purchase was made, is admissible against the buyer. (Page 222.)

2. PRIMARY EVIDENCE—PAROL PROOF OF STATEMENT.—In an action to rescind a sale for fraud, the contents of a written statement to a commercial agency, made by the agent of the buyer, may be proved by the verbal admission of such agent, such proof not contravening the general rule which excludes oral evidence where there is a writing in existence evidencing the same facts. (Page 222.)

3. SECONDARY EVIDENCE—WHEN NOT PREJUDICIAL.—While it was error to allow a writing which purported to state the contents of a certain written statement to be read to the jury, where the original statement would be admissible, such error is not prejudicial if it is conceded that the original statement was made, and that the statement made to the jury correctly expressed its contents. (Page 223.)

4. ERROR—WHEN NOT PREJUDICIAL.—In an action by a seller to rescind on the ground that the sale was induced by false representations of the

buyer as to his solvency, the seller's testimony that if he had known the buyer's insolvency at the time of the sale he would not have sold the goods, if erroneous, is not prejudicial. (223.)

5. REPLEVIN—WHEN DEMAND UNNECESSARY.—It is unnecessary in replevin to prove a demand for the property before suit if defendant's answer has set up title in himself, showing that a demand would have been futile to induce a surrender of the property. (Page 225.)

6. APPEAL—QUESTION NOT RAISED BELOW.—The question whether a seller can rescind the sale for fraud, without offering to return a note of the buyer given for the purchase money, cannot be first raised on appeal. (Page 225.)

7. RESCISSION—RETURN OF ACCEPTANCE.—In a suit by a seller to rescind the sale and recover the goods sold by him, brought against an officer who has attached the goods at the instance of creditors of the buyer, the officer cannot resist the rescission on the ground that a note by the buyer for the purchase money has not been tendered. (Page 225.)

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

*Austin & Taylor*, for appellant.

The statement of Wertheimer's business rating as shown by the commercial agencies was not competent for the purpose of showing fraudulent intent in the purchase of the goods. 47 Ark. 253; 64 Ark. 16. The instructions were abstract and misleading. 53 Ark. 38; 9 Ark. 212; 13 Ark. 317; 57 Ark. 627; 37 Ark. 580; 18 Ark. 521. They were erroneous also because they assumed facts which should have been left to the jury. 51 Ark. 88; 24 Ark. 544; 94 U. S. 610. The taking of the property by the sheriff was not tortious. 23 Ark. 417; 24 Ark. 264. Since he was not claiming it or exercising acts of ownership over it, a demand was necessary before this suit. 35 Ark. 169.

*N. T. White*, for appellee.

The fraudulent intent of Wertheimer, at the time of the purchase of the goods, authorized a rescission of the sale. 47 Ark. 247; 63 Ark. 87; 64 Ark. 12. It was not error to instruct the jury that fraudulent intent is usually provable only by circumstances. 47 Ark. 247; 63 Ark. 22. Demand was not necessary. Cases *ante.*

Wood, J.    This is a suit to replevy ten barrels of whisky of the aggregate value of $629.75, and warehouse receipts for fifteen barrels of whisky in bond, of the value of $158.71, the whole, free and in bond, being of the value of $788.46.    The defendant denied all the material allegations of the complaint.

It appears that Mrs. E. Wertheimer had been engaged in the wholesale liquor business in Pine Bluff.    On the 4th of April, 1896, various creditors had writs of attachment levied by the sheriff upon the property in controversy.    The whisky in suit was sold by the plaintiff to Mrs. Wertheimer on March 14, 1896.    It is contended by the plaintiff that Mrs'. E. Wertheimer obtained the whisky through fraud, which entitled it to rescind the sale, and to recover the possession of the whisky from the sheriff.    The defendant contends that there was no fraud in the purchase.    This is purely a question of fact.    The verdict of the jury has evidence to support it.    It would serve no useful purpose to set out the evidence and to discuss the questions of fact.

The propositions of law presented in appellant's brief are:  First, the court permitted incompetent evidence; second, the court erred in its declarations of law.

1.    Ed. Wertheimer was introduced by the plaintiff.    He testified that on November 12, 1895, he furnished a statement of assets and liabilities of the business of Mrs. E. Wertheimer, and also a supplemental statement on December 11, 1895.    At that time he and his brother had control of the business of their mother, Mrs. E. Wertheimer, and had authority to make purchases and sales.    The witness was asked to look at a paper, and to see if it was in substance the report.    He was then asked if he furnished a statement of the liabilities as stated in that report, and answered that he could not say exactly, because he did not remember whether those are the exact figures or not.    He further stated: "If I know, this entire thing is correct. I was there when it was furnished."    He was then asked: "Does that correctly state it?" and answered: "I can not say what the whole is; I can't remember."    He was asked if the paper contained a statement of the reports that he made of the condition of the business at the time, and answered as follows: "I remember some of the figures, but not all."    He was then interrogated

upon the items appearing in the purported statement, and was asked by the attorney for the plaintiff as follows: "I just want to know whether this is the report you gave to the commercial agency?" His answer was "Yes; the amounts are correct, as near as I know." The witness was then asked to mention some items in the purported statement that he did not recall as being correct. He answered: "Open accounts, $584. I do not know whether that is the exact amount or not." He was then asked: "What else now on there that you don't remember exactly whether or not it is correct?" His answer was: "The open accounts; I think that is about right, but I don't know. We owed about eleven thousand dollars." He was further asked: "Is there any item that you say is not correct that you remember?" His reply was: "No, sir; I cannot say that, because I don't remember whether it is correct or not. I only say those are correct which I know to be about correct." Witness was then asked to read the paper purporting to be the additional statement of December 11th, which he did. He was then asked: "Do you remember that report?" His answer was: "I remember something of it; that the question was asked, and I answered 'Yes.'" He was then asked, "Did you make that paper,—that identical paper?" and replied, "No, sir." The witness stated that the report he made was at the request of Dun. He did not remember whether the report was made verbally or in writing. The correspondent of Dun came, and took the report. As to whether the witness wrote it, or the agent took it down, the witness did not remember. Proper exceptions were saved to the testimony.

The statement itself, although not made by E. Wertheimer herself, was pertinent in determining the question of fraud. It was made by one who had the control and management of her business, and for the purpose of securing a commercial rating, as the basis of credit. It was strictly in the line of her agent's authority, and tended to throw light upon the intent with which the purchases were made. *Taylor* v. *Mississippi Mills*, 47 Ark. 247.

The statement made to Dun's Agency does not come within any of the classes mentioned by Prof. Greenleaf as excluding oral evidence where there is a writing in existence evidencing

the same facts. 1 Gr. Ev. § 85, *et seq.; id.* § 97. "Where the writing is collateral to the principal facts, and it is on these facts that the claim is founded, the better opinion seems to be that the confession of the party, precisely identified, is admissible as primary evidence of the facts recited in the writing, though it is less satisfactory than the writing itself." 1 Gr. Ev. secs. 96, and authorities cited.

The court should not have allowed a paper purporting to show the contents of the statement made to the agency to be read to the jury. The witness might have used such a paper to refresh his memory, and then have testified as to the facts, independent of the paper. But the point of inquiry, so far as the statement was concerned, was as to whether it was made, and the facts concerning it, which the witness who made it could testify to, and his testimony would be primary evidence. 1 Gr. Ev. § 90.

However, the error of the court in allowing the statement to be proved in the manner indicated by reading the paper to the jury could not be prejudicial; for we do not understand appellant as contending that the paper introduced in evidence is in any manner different from the statement as originally made as to the assets and liabilities of E. Wertheimer. It must be conceded that the testimony of Ed. Wertheimer, supra, shows that the original statement to Dun's Agency was made, and that its contents were correctly reflected in the statement read in evidence. The court below was justified in coming to this conclusion, however conflicting and uncertain in itself the testimony of Wertheimer may have been. This counsel does not controvert. Then how could the error in the mere manner of proving the fact be prejudicial? If it could be insisted that no such statement was made, or that, if made, it was different from that shown by the paper read in evidence, or that the original statement and that read in evidence might have been different, then the error would be prejudicial.

Appellants insist that interrogations five and six. and answers thereto by Edward M. Babbitt, secretary of appellee, should not have been admitted in evidence. These questions and answers are as follows: "Q. What information did the Rugby Distillery Company have of the financial condition of

E. Wertheimer at the time the property described in interrogatory second was ordered or shipped to him? A. Our agent, Mr. Kahnweiler, reported Wertheimer as being all O. K.; also gave reference to one Louisville house with whom Wertheimer had done business. We telephoned to Hetterman Bros., the party referred to, for reference, and they reported their accounts with Wertheimer as satisfactory. Both Dun and Bradstreet reported the firm in good standing. Q. Do you know, or have you any means of knowing, that E. Wertheimer was insolvent at the time the whisky and warehouse receipts were sent, and if you had known the true financial condition of E. Wertheimer at that time, would you have sent the goods and warehouse receipts? A. We did not know that E. Wertheimer was insolvent. On the contrary, all information we could secure in reference to her credit was that she was in good standing. Had we known she was insolvent, we would not have filled the order."

If it was error to permit the questions and answers, it was harmless error, and a matter about which appellant could not complain. The knowledge, or lack of knowledge, on the part of appellee and its agents of the insolvency of E. Wertheimer, if she were insolvent, at the time the whisky was purchased or shipped to her, could not affect the issue as to whether appellee had the right to rescind the sale and recover the property sold. That issue depended wholly upon whether or not Mrs. E. Wertheimer had made false representations to induce, and which did induce, the sale, and whether, at the time the sale was made to her, she intended not to pay for the goods purchased. Had the Rugby Distilling Company known of the insolvency of E. Wertheimer at the time the sale was made, that fact might tend to show that the sale was not superinduced by any fraudulent representation of Mrs. E. Wertheimer as to her solvency, but appellant could not be prejudiced by such testimony.

2.   We find no reversible error in any of the instructions. While we would not approve of the instructions of which appellant complains as in good form, on account of the peculiar phraseology employed, still we do not consider that they are justly open to the criticism appellant makes of them as being misleading. We think the instructions complained of are in

harmony with the rules governing such cases as declared by this court in *Taylor* v. *Mississippi Mills,* 47 Ark. 283; *Bugg* v. *Wertheimer-Schwartz Shoe Co.,* 64 Ark. 12.

3.   No demand was necessary before the institution of this suit.   That is essential only where the defendant would not deny or contest the plaintiff's right to recover.   The defendant in such a case should have the opportunity of surrendering that which the plaintiff claims, without being subject to the annoyance and expense of a law suit.   But here it is obvious that a demand would have been of no avail.   The sheriff had seized the property under writs of attachment, and the contest he has made, denying the right of plaintiff to repudiate the sale to Mrs. E. Wertheimer, and setting up her title to the property in controversy, shows clearly that a demand before suit would have been futile to induce a surrender of the property.   Cobbey, Replevin, § 448.

4.   The question as to the return, or offer to return, the acceptance of Mrs. E. Wertheimer was not specifically raised in the court below, and therefore cannot avail here.   But the appellant could not raise the question any way.   As was said by this court in *Ames Iron Works* v. *Kalamazoo Pulley Co.,* 63 Ark. 87, appellant owed appellee nothing, he was in no way responsible on the note, and could not be injured by the failure to return same.   He is not in a position to resist the rescission of the alleged fraudulent sale to Mrs. E. Wertheimer on account of a failure to return, or offer to return, the note.   Mrs. Wertheimer alone, or some one responsible on the note, might raise that issue.

The judgment is affirmed.