## ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* KILPATRICK.

### Opinion delivered October 28, 1899.

1. CARRIER—PASSENGER.—The purchase of a ticket is not a prerequisite to the relationship of passenger and carrier, under Sand. & H. Dig., § 6213, providing that "all passengers who may fail to procure regular fare tickets shall be transported over all railroads in this state at the same rate and price charged for such tickets for the same service." (Page 52.)

2. SAME.—One who entered upon the platform of a railway coach without a ticket, intending to pay his fare, became a passenger, although he did not go upon the car at the proper place, and made no effort to enter the coach until the train had run six hundred feet. (Page 54.)

3. DAMAGES—EXPULSION OF TRESPASSER.—A railway company is liable for damages where a trespasser is expelled from a train wilfully, wantonly and maliciously by a brakeman in the course of his employment. (Page 55.)

4. SAME—EXPULSION OF PASSENGER.—A railway passenger who receives injuries while being wrongfully expelled from a train by a brakeman may recover damages of the carrier, whether the brakeman was acting within the scope of his employment or not. (Page 55.)

5. BRAKEMAN—SCOPE OF EMPLOYMENT.—Where it is the duty of a brakeman to see that persons do not enter the cars without tickets, he is acting within the scope of his employment when he forcibly ejects a passenger who has entered upon the platform of a car without a ticket. (Page 55.)

6. NEGLIGENCE—PROXIMATE CAUSE.—Where a boy, pushed from the platform of a rapidly moving train by a brakeman, caught at the iron handrail, and fell under the wheels, so that his foot was crushed, the push was the proximate cause of the injury. (Page 55.)

7. WITNESS—RIGHT TO PROCESS FOR PHYSICIAN.—It is not error to refuse an attachment for a witness who is a practicing physician, unless it appears that he has failed, when duly summoned, to appear and give his deposition. (Page 56.)

8. CONTINUANCE—CUMULATIVE EVIDENCE.—It is not error to refuse a continuance for the absence of a witness whose evidence would be merely cumulative, where no prejudice could have resulted from his failure to testify.    (Page 56.)

9. SAME—ABSENCE OF NON-RESIDENT WITNESS.—It is not error to refuse a continuance asked on account of the absence of a non-resident witness.    (Page 57.)

10. EVIDENCE—WAIVER OF OBJECTION.—Appellant company cannot complain that appellee introduced parol evidence to prove a writing if it introduced similar evidence to the same effect, and asked instructions bearing upon the proof thus offered.    (Page 57.)

11. PAROL EVIDENCE—CONTENTS OF WRITING.—Where it is a question whether a brakeman in ejecting a ticketless passenger was acting within the scope of his employment, it is competent to introduce parol evidence of the contents of a placard attached to the coach defining the duties of a brakeman in this respect.    (Page 58.)

12. NEW TRIAL—SURPRISE.—A new trial should not be granted on the ground of surprise at the adversary's testimony if no postponement was asked in order to procure evidence in rebuttal.    (Page 58.)

13. SAME.—The fact that appellee made statements to strangers out of court in conflict with his subsequent sworn testimony is not a ground for a new trial, however such conduct, if proved, might have affected appellee's credibility as a witness.    (Page 60.)

Appeal from Franklin Circuit Court.

JEPHTHA H. EVANS, Judge.

*L. F. Parker* and *B. R. Davidson*, for appellant.

Appellee was not a passenger, and had not the rights of one. A railroad company may make reasonable rules and regulations to govern the receiving of its passengers, and the passengers are bound to take notice of and obey such rules. 4 Ell. Rys., §§ 1576, 1579, 1580, 1581, 1603; 132 Mass. 116. At least, until a party who enters in violation of the rules is accepted by the carrier as a passenger, he is not such. 139 Mass. 238; 19 Ore. 354; 15 Gray, 20; 59 Ark. 395–404. The burden was on appellee to show that he was ejected by an employee acting within the scope of his authority. 37 Kan. 212; 60 Mo. 413, 419; 72 Mo. 62; 82 Tex. 516. A brakeman has no such implied authority. 27 S. W. 118; 56 Fed. 1014; 59 Ia. 428; 69 Miss. 723; 86 Pa. St. 418; 20 Ala. 268; 48 Ark. 177; 56 N. Y. 489. And the company is not liable for his unauthorized

act. 124 Ind. 394; 19 Oh. St. 110; 19 Гa. St. 256; 5 Wheat. 326; 32 N. J. L. 328–331; 26 Ind. 70–75. It was an abuse of discretion to refuse the adjournment asked by appellant, in order to give his witnesses time to arrive. 52 Miss. 23, 34; 10 Ark. 527; 21 Ark. 460; 60 Ark. 564; 79 Cal. 477; 34 Kas. 312. Likewise, it was an abuse of discretion to make the granting of such adjournment conditional on defendant's payment of the jury's fees for one day. 23 Ark. 722; 7 N. Y. S. 90; 9 Wash. 222; 5 N. J. L. 539; Cf. 13 R. I. 364; Const. Ark. art. 2, § 13; Black, Con. Law, 443. It was error to admit secondary evidence of the contents of the placard on defendant's cars. 1 Phil. Evid. p. 595; ch. 9, § 4; 2 *ib.* pp. 518–525, ch. 7; 1 Greenl. Ev. §§ 82, 84, 88–94; Best, Ev. §§ 30, 87, 89, 215, 216 *n*; 37 Pa. St. 228; 16 How. 14–26; 10 Kas. 184, 188; 50 Kas. 436; 88 Ala. 182; Bradner, Ev. pp. 333, 249, 246; 1 Rice, Ev. pp. 155, 157, 158, 159, 166. The only permissible secondary evidence would have been an examined copy. 1 Phil. Ev. p. 263; 87 Cal. 209. The motion for a new trial on account of surprise and misconduct should have been granted.

*Chew & Fitzhugh* and *C. B. Moore*, for appellee.

The finding of the jury on conflicting evidence will not be disturbed on appeal. 19 Ark. 684; 23 Ark. 209; 23 Ark. 32; 46 Ark. 524; 47 Ark. 196; 50 Ark. 511. It was not error to refuse a postponement in order that the defendant might procure evidence which was merely cumulative. 46 Ark. 182; 60 Ark. 481; 52 Ark. 120. The supplemental bill of exceptions can not be considered, because not attested by disinterested bystanders. 3 Am. & Eng. Enc. Pl. & Pr.; 14 S. W. 946. The contents of the placard were only collateral to the issue, and hence were provable by parol. 1 Greenl. Ev. § 85; 19 Ill. 510; 28 Ga. 111; 49 S. W. 975; 1 Rice, Ev. 420; 11 Ex. 133; 39 Am. Dec. 39; 99 Mass. 542; 124 Mass. 318; 11 St. Rep. 737; Whart. Cr. Ev. 163–8; 39 S. W. 203. Appellant waived all objection on this point by first entering into proof of the matter. Thomps. Trials, 706–7; 29 N. W. 661. The exceptions should have been specific. 58 Ark.

373; 29 Ark. 17; 15 Ark. 345; *ib.* 415, 48 Ark. 177. Appellant was responsible for the act of the brakeman. 2 Wood, Rys. 1045; 42 Ark. 542; 58 Ark. 381; 48 Ark. 177; 64 N. Y. 129; 112 Pa. St. 551; 36 Kas. 655; 117 N. Y. 505; 72 Ga. 292; 29 Ill. App. 90; 95 Ky. 72; 38 Ind. 116; 14 How. 468; 110 Ind. 156; 40 How. Pr. 456; 4 Am. & Eng. Ry. Cas. 537. Newly discovered evidence, to entitle a party to a new trial, must be such as could not have been procured at the trial by the exercise of reasonable diligence, it must go to the merits of the cause, it must not be merely for the purpose of impeaching a witness, and it must not be merely cumulative. 17 Ark. 404; 26 Ark. 496; 2 Ark. 144; 25 Ark. 387-8; 40 Ark. 447; 38 Ark. 506-9; 60 Ark. 485; 28 Ark. 124. It was not error to refuse a new trial. 25 Ark. 312; 38 Ark. 516; 55 Ark. 312.

WOOD, J. The complaint alleged, in substance, that Geo. Kilpatrick boarded appellant's train at Van Buren, intending to go to Chester as a passenger, but that appellant negligently, wilfully and maliciously ejected him, whereby his foot was caught under the cars, and so badly crushed as to necessitate amputation. The answer denied all material allegations, and set up contributory negligence.

The substantive facts, as testified to by appellee, are: That he went to appellant's station at Van Buren for the purpose of taking its passenger train to Chester. The fare from Van Buren to Chester was 75 cents, and appellee had the money to pay his fare. Appellee got upon the depot platform, even with the front end of the smoking car, and got on the front end of the smoking car. He did not enter the coach, for the reason that he desired to see two companions who had gone up the track a short distance, to "wave" at him as he passed by. He went and was standing upon the rear end of the second car from the engine. He went to the depot, and just as he stepped upon the platform the train was ringing the bell and getting ready to pull out. He noticed a man standing down at the rear end of the smoking car,—the third car from the engine,—who had a lantern in his hand, and who was helping passengers on and off. Appellee did not go to the end of the car where the brakeman was, because he

did not have time.   He did not get on until after the cars had started.   The brakeman did not get on until after appellee had got on.   The man appellee had seen standing at the rear end of the car came on through the car to where appellee was standing on the platform, and appellee saw the word "Brakeman" on his cap.   He asked appellee where he got on, and appellee told him, "At Van Buren."   He then asked appellee where he was going, and appellee replied, "To Chester."   He then asked appellee if he had a ticket, and appellee told him he did not have time to get a ticket.   The brakeman then told appellee to get off, and appellee replied that "the train was running too fast; besides, he had the money to pay his fare to Chester." And the brakeman said, it "did not make a damn bit of difference; that he [appellee] would have to get off," and the brakeman put his hands upon appellee's shoulders, and gave him "a pretty hard shove down the steps," and as appellee was falling he grabbed the iron at the end of the car, and it threw him to one side, and the train ran over his foot, crushing it all to pieces, so that it had to be amputated.   Appellee was thrown off at the road crossing about two hundred and fifty yards from the depot platform.

The testimony of appellee as to his having money to pay his fare and as to the time, place, and circumstances of his getting on the cars, is corroborated by several witnesses.   There was much evidence on behalf of appellant contradictory of all this.

It was shown that the train which injured appellee consisted of two sleepers, a chair car, a coach, a combination car, and baggage car.   A part of the train was vestibuled.   The vestibule requires the door to be opened to enter, that is, passengers passed through a door on the steps of the car before getting on the platform.   The sleepers, the chair car, and between the chair car and smoking car are vestibuled.   Between the combination car and the smoking car it is vestibuled on the coach end.   The platform of the combination car was open. It was the duty of the brakeman to station himself at the steps of the car, and prevent people from entering the cars who did not have tickets.

A placard fastened to the handles of the platform on the rear end of the coach read: "Trainmen must examine tickets before allowing passengers to enter the cars." This was one of the rules of the company. A man on the platform would not be considered within the cars. It was further shown that, if a passenger applied to enter the train without a ticket, same would be held to enable him to purchase one.

The verdict was for $12,000. A remittitur was entered for $7,000, and judgment was rendered for $5,000. Appellant insists upon a reversal of this judgment for the following reasons, which we will consider in the order presented by its counsel.

1. *Because the plaintiff was not a passenger.* The court, *inter alia*, instructed the jury as follows: "Unless it appears from the preponderance of the evidence that plaintiff at the passenger station got upon defendant's passenger train, able and intending to pay for being carried as a passenger thereon, and that a brakeman on said train, acting within the scope of his authority, wilfully, maliciously and wantonly, knowing the danger to plaintiff of such act, pushed plaintiff from said train while it was in such rapid motion as to endanger .plaintiff's safety, and thereby caused plaintiff the injuries mentioned in the complaint, he cannot recover.

"If the plaintiff was stealing a ride on defendant's train, and was pushed off in any manner by a brakeman on defendant's train, plaintiff cannot recover, and you must find for the defendant."

Under these instructions the jury must have found that appellee was a passenger, and that he was "wilfully, maliciously, and wantonly expelled." Appellant contends that appellee was not a passenger, even if the facts be taken as stated by him, because they show "that he had not purchased a ticket, that he did not go upon the car at the proper place, and that he remained on the platform of a coach in which he would not have been permitted to ride, and made no effort to enter the train until after it had run six hundred feet." We are of the opinion, conceding the facts to be as appellee states them, and as the jury might have found, that appellee was a passenger. In

other words, one who in good faith goes to a railroad station, intending to take passage upon one of its regular passenger trains, who is able and intends to pay his fare upon the demand of the carrier, and who enters over the steps of a passage way to a car where passengers ride, and through an entrance, unobstructed, which passengers may freely use,—we say, one who embarks upon a passenger train under such circumstances is a passenger, although he may not have purchased a ticket, and may not have entered at a place where a porter or brakeman was stationed to inspect tickets, and although he may have passed over to, and may have been found standing temporarily upon, the platform of a coach in which passengers were not permitted to ride.   The purchase of a ticket is not a prerequisite to the relationship of passenger and carrier under our statute.   Sand. & H. Dig., § 6213.

A rule requiring those who intend to become passengers to purchase tickets before entering the cars, and to exhibit same to an agent of the company stationed at the steps or entrance of the cars, being for the convenience of the company and the traveling public as well, is generally considered reasonable, and may be enforced by any proper methods.   In some jurisdictions the manner of enforcement may be carried to the extent of expulsion on failure to comply with the rule.   And where there is no inhibitory statute, a common method of enforcement is by requiring the one who does not purchase a ticket to pay more fare than one who does.   But, before such a rule can be enforced in those jurisdictions, a reasonable opportunity must have been afforded the passenger to comply with the rule, and there must have been notice given of such rule.   See Hutch. Car. § 570; 3 Wood, Railways, 1674; 4 Elliott, Railroads, § 1603, and authorities cited by these writers; 1 Fetter, Car. Pass. p. 689–90, §§ 267, 268.

But our statute provides that "all passengers who may fail to procure regular fare tickets shall be transported over all railroads in this state at the same rate and price charged for such tickets for the same service."   Sand. & H. Dig., § 6213, *supra.* Any rule which prescribed, as a method of enforcement for non-compliance therewith, the forfeiture of the right to be

carried as a passenger would contravene this statute, which, in our opinion, does not contemplate the expulsion of passengers for failure to purchase tickets and to exhibit same before entering the cars. It seems to make no difference, under this statute, whether the failure of the passenger to procure a ticket is caused by the infidelity or carelessness of the railway's employees or by the carelessness of the passengers.

As to appellee's standing upon the platform of a coach where passengers were not permitted to ride, the proof by appellee would warrant the inference that this was but a temporary position, taken for the purpose of seeing two of his companions who had gone up the track a short distance "to wave at him" as he passed by. The jury might have inferred that the brakeman did not eject appellee because he was standing upon the platform, but because he had no ticket.

Taking the appellee's testimony as true, it does not appear that he had furtively taken his position on the platform for the purpose of stealing a ride, and thus defrauding the company of its fare for transportation. Believing him, as the jury did, there is nothing in his position upon the platform to constitute him a trespasser.

One who goes upon the platform of the cars of a passenger train with the *bona fide* intention of paying his fare and becoming a passenger does not forfeit his right to be protected as such, because, forsooth, he tarried for a short time, before entering the car, in a place where passengers are forbidden to ride. Such a one, we think, comes completely under the control of the company when he steps upon the train intending to become a passenger. His acceptance by the carrier from that moment should be implied, and his divergence temporarily from the right way as a passenger should not lessen the duty of care due him by the carrier, but only lessen his chances for recovery by reason of his own negligence. A passenger who voluntarily assumes a dangerous and forbidden position on a train does not thereby forfeit his rights to the care due by the railway company to its passengers. But if an injury occurs to him while in the position, which would not have been produced had he not been in such position, atthough the injury

was also the result of the negligence of the company, he cannot recover, because of his contributory negligence. Hutchinson, Car. §§ 651–2, and authorities cited; 1 Fetter, Car. Pass. p. 428, § 167; 4 Elliot, Railroads, §§ 1630, 1633; 2 Wood, Railways 1327, § 308.

But, whether appellee was passenger or trespasser, the company, under the finding by the jury that he was wilfully, maliciously and wantonly expelled, would still be liable, if it were bound by the conduct of the brakeman. For, although the carrier owes the trespasser no positive duty of care, it must not injure him wilfully, wantonly and miliciously. *Railroad Co.* v. *Dial*, 58 Ark. 318, authorities cited; *Ry. Co.* v. *Hacket, id.* 381; *Davis* v. *Houghtelin*, 14 L. R. A. 737, note; 2 Wood, Ry. 1045; 2 Fetter, Car. Pass. § 240, p. 622, authorities cited; 4 Elliott, Railroads, § 1253. The instructions *supra* were therefore more favorable to appellant than it had the right to ask. This brings us to consider appellant's second reason for reversal.

2. *Because appellee did not prove that he was ejected by an employee acting within the scope of his employment.* Appellee being a passenger, this was immaterial. Hutchinson, Car. § 595 *et seq;* 4 Elliott, Railroads, § 1638; *Haver* v. *Cent. Ry. Co.*, 12 Am. & Eng. Ry. Cas. (N. S.) p. 261, and note. But there was evidence to justify the conclusion that the brakeman was acting within the scope of his employment. It was his duty to see that persons did not enter the cars without tickets. There was evidence from which the jury might have found that he was attempting to perform this duty, and pushed it to the rigorous and unwarranted extreme of removing all possibility of the passenger's entering, ticketless, by violently removing him from the train. For a similar act it has been held that the company, as well as the brakeman, is liable. *Priest* v. *Hudson R. R. Co.*, 40 Howard Pr. 456; see 3 Elliott, Railroads, sec. 1253, and authorities cited in notes; *H. & T. C. Ry. Co.* v. *Washington*, 30 S. W. Rep. p. 719.

3. *Because pushing the boy from the platform was not the proximate cause of the injury.* Pushing a boy "with a pretty hard shove" down the steps from the platform of a car on a

train running "pretty fast" might reasonably be expected to produce most serious consequences.   Just such an effect as was produced here might naturally be expected to follow as the proximate result of such a forcible expulsion.   It was but natural that one should attempt to break the force of his fall by catching to any support at hand, and in doing so to bring his feet, which were necesarily dangling and uncontrolled, under the wheels of the moving train.

4.   *Because it was an abuse of discretion to refuse an attachment for the witness, Dr. Giles Lucas, and also to refuse to adjourn the hearing from seven o'clock p. m. until nine a. m. of the following morning for the testimony of Dr. Lucas and J. R. Cocke; and it was contrary to law, as well as an abuse of discretion, to impose upon the defendant the payment of twenty-four dollars to the county of Franklin, expenses of the regular panel of the jury for one day, as a condition upon which the case could stand open, and compel the defendant to proceed to prepare, argue and settle instructions in the night, and argue a case of this magnitude in the night, and deprive it of this valuable testimony expected on the morning train.*

Under our statute, the deposition of a practicing physician may be used, instead of his testimony *ore tenus*.   Sand. & H. Dig., § 2978, sub-div. 2.   And such witness shall not be compelled to attend unless he has failed, when duly summoned, to appear and give his deposition.   There was no showing that Dr. Lucas had been summoned, and had failed to appear and give his deposition.   *Id.* § 2979.   Appellant could not, therefore, enforce his attendance, and the court did not err in refusing an attachment for him.   Moreover, it appears that the testimony he was expected to give was but cumulative, and no prejudice could have resulted from his failure to testify.   *Ry. Co.* v. *Dobbins,* 60 Ark. 481; *Brown* v. *St. Louis, I. M. & S. Ry.*, 52 Ark. 120.   Appellant had not asked for a continuance of the cause on account of the testimony of the witness Cocke, but consented to go into the trial without him, with the understanding that, if he did not appear in person before the conclusion of the evidence, a certain statement, which was reduced to writing and agreed upon, should be read as evidence.   Cocke

did not appear, and this statement was read. It was certainly not error for the court to refuse to postpone the cause for any length of time under these circumstances, in order to obtain these witnesses. If it was not prejudicial error for the court to have refused it absolutely, it certainly could not be erroneous for the court to have granted the request for a postponement, *ex gratia*, but upon condition that appellant pay the expense of the regular panel of the jury for one day. As appellant did not see proper to comply with the condition, the result was tantamount to a refusal by the court to grant the request for postponement. It would have been quite different had appellant been entitled as a matter of right to the postponement. Then, had the court imposed, as a condition for the granting of such request, terms that were unreasonable and illegal, the appellant would be in an attitude to complain. It appears that witness Cocke lived in Iowa, and was absent from the state. Under Sand. & H. Dig., § 2978, his deposition might have been taken. Appellant was not in a position to enforce the attendance of these witnesses in person, nor to insist upon a continuance or postponement of the cause on account of their absence. The court could not know that the absent witnesses, whose coming was of their own volition, would certainly make their appearance at the time expected. Many contingencies might have prevented. The witnesses were not within the court's power. The court, we think, under the circumstances, might very properly have granted the postponement without imposing the condition, inasmuch as it does not appear that such a postponement would have been detrimental to the rights of appellee. But its refusal to do so was not error.

The time for preparing and presenting requests for instructions, and for determining the law of the case after the evidence is closed, and for making arguments to the jury, are all within the sound discretion of the trial court; and it is a large discretion, which will not be restricted further than to prevent injustice or oppression. No abuse of such discretion is shown here.

5. *Because the court erred in allowing the plaintiff to introduce the testimony of W. R. Titus as to what the placard contained.*

The evidence was not introduced for the purpose of show-ing the contents of the placard.  That was not the matter in issue.   The purpose of the evidence was to determine what was the duty of the brakeman.   The placard was one method of showing it, but it was not the only one.   It could have been and was established by other proof, and that too without objection from appellant.   Appellant itself proved by two witnesses pre-cisely the same thing that the appellee showed the placard con-tained, and it asked instructions bearing upon the proof thus offered by it.   We think appellant therefore must be held to have waived any objection it might have had to the manner of proving the contents of the placard, even if such objection were otherwise well taken.   Thomps. Trials, §§ 706–7.

But the contents of the placard were merely incidental to the main issue, and we might say of this placard as we said of a certain statement in *Triplett* v. *Rugby Distilling Co.*, 66 Ark. 219: "It does not come within any of the classes mentioned by Prof. Greenleaf as excluding oral evidence where there is a writing in existence evidencing the same facts." 1 Greenl. Ev. § 85 *et seq.*; *Id.* § 97.   See also *Chicago, B. & Q. Ry.* v. *George,* 19 Ill. 510; *Yonge* v. *Kinney,* 28 Ga. 111, and other author-ities cited in appellee's brief.

6.   *Because of error in the granting and refusing of requests for instructions.*   (Embracing reasons for reversal from six to thirteen inclusive.)

The charge of the court contains no error for which the appellant may complain, and really presents the law more fav-orable to appellant than it had the right to ask or expect. We refrain from discussing the objections *seriatim,* because what we might say would be but a repetition of familiar principles oftentimes announced by this court.

7.   *Because the motion for new trial on account of surprise and misconduct should have been granted.*

In its motion for new trial appellant states that it "was surprised by the testimony of Geo. Kilpatrick to the effect that he had entered the train from the right side of the train (that is, from the platform of the station), when he had repeatedly told credible parties that he had entered the train from the left

side, opposite to the platform, which facts had been communicated to defendant, and defendant had no notice that anything would be claimed to the contrary, and relied upon the testimony being in accord with his statement. And also by his testimony to the effect that he was on the rear end of the car next the smoker (which was two car lengths from the locomotive), when he had repeatedly stated to divers parties that he was on the front end of the first coach or car (which was the end of the car next to the locomotive), which facts had been communicated to defendant, and it relied upon plaintiff's testifying to this state of facts, and was prepared to show by many witnesses that there was a solid partition in the second car from the engine through which no one could pass from the position where the brakeman was conceded to be, to the place where Kilpatrick had represented himself to be. That defendant's surprise was such that ordinary prudence could not have guarded against it." The alleged misconduct of plaintiff for which a new trial was asked consisted in the making of the statements set out *supra*, and the further statement to divers parties, who communicated same to defendant, "that he did not know who pushed him off; did not see the party that pushed him off,"— whereas upon the trial he testified to a different state of facts. And further misconduct in refusing to make any statement of the facts set out *supra* to defendant, and in exercising control over his witnesses to such an extent that he would not allow them to make any statement of facts within their knowledge to defendant.

The appellant made no effort at the trial, after the testimony of Kilpatrick was adduced, to have the cause postponed or continued for the purpose of getting the witnesses by whom it expected to show that the plaintiff had made statements upon which it relied contradictory to his testimony on the trial. It did not show that the witnesses to whom he made these contradictory statements complained of were not then present at the trial, nor that he could not prove the alleged facts and statements in contradiction of the testimony of appellee, as well by the witnesses who were present as by those who were absent. If appellant had any right to be surprised, and was really sur-

prised, at the testimony of appellee, it certainly did not manifest its surprise at the proper time. As these statements which appellee is said to have made before the trial were communicated to appellant, it knew who the witnesses were at the time of the trial, when appellee was giving the alleged inconsistent evidence, yet appellant did not then express its desire to have these witnesses, and to show these alleged inconsistencies.

In *Nickens* v. *State*, 55 Ark. 567, it is held that "one who is surprised by his adversary's testimony is not entitled to a new trial on that ground, if, instead of asking a postponement to procure necessary evidence, he reserves his surprise as a masked battery in the effort for a new trial." *Overton* v. *State*, 57 Ark. 60, and authorities there cited, including many civil cases. There is no reason for a different rule in civil cases. Appellant has not brought itself within this rule. Asking for a temporary postponement on account of the absence of witnesses Lucas and Cocke was not put upon the ground of surprise. But, aside from this, a motion for a new trial should never be granted on the ground of surprise when it is shown that the party who claims to have been surprised had the means at hand to challenge and overcome the conditions which caused the alleged surprise. Such was the case here. If appellant was surprised that appellee testified that he entered the car from the right side, when he had previously told divers persons he entered from the left, then appellant was prepared to show, and did show, that appellee had stated that he entered from the left, and additional testimony upon that point would only be cumulative and for contradiction. So also if the appellant was surprised that appellee testified that he was on the rear end of the car next to the smoker, when he had previously stated to divers persons that he was on the front end of the first coach, it was prepared to show, and did show, by witnesses that he had made such statements. In fact, it appears, from an examination of the affidavits in support of the motion for new trial, that, when compared with the facts proved at the trial, they are but reiterations, in all substantive and pertinent points, of what was actually shown at the trial.

The alleged misconduct of appellee in making statements to

persons out of court different from his testimony on the trial, by which appellant was deceived and disappointed, and in not permitting his witnesses to talk with appellant's agents with reference to the facts of the case, presents a cause for reversal more novel than substantial. However reprehensible in morals such duplicity and disengenuous conduct might be, we know of no rule of law that makes such conduct a bar to recovery, or even a plausible ground for surprise in actions of this kind. Undoubtedly, such conduct should go very far towards convincing the jury that the one guilty of such conduct was unworthy of belief, and thereby lessening the chances of his success in a case depending upon his evidence. But that is as far as it could go. Appellant and appellee were dealing at arm's length. Appellee was under no obligation to disclose his case to appellant. Nor can his making statements to various parties, out of court, in conflict with his sworn testimony, which statements were communicated to appellant, be considered such misconduct as would forfeit his right to recover. Such alleged misconduct did not deprive appellant of its right to prove the truth at the trial. We do not see that there is anything whatever in the alleged misconduct germane to the issue of the liability or non-liability of appellant, further than as we have indicated as affecting the credibility of appellee as a witness, and that was for the jury.

8. *Because the verdict was contrary to the evidence.*

We have grave doubts of the correctness of the verdict. It seems to us that appellee, in view of the statements he is shown to have made to various persons, so utterly contradictory of his testimony on the witness stand, was rendered wholly unworthy of belief. In coming to this conclusion, the numerous affidavits of appellant produced on its motion for new trial have made their impression upon us. But, of course, we must eliminate any such impression in favor of the jury's verdict, for the affidavits were not before it. But, aside from these, it seems to us the preponderance of the evidence was in favor of appellant's contention, and the learned trial judge might very properly have set aside the verdict. But he saw and heard the witnesses, and doubtless knew something

of their character and standing, which it is impossible for us to know. After the trial judge has permitted such a verdict to stand, such deference is given to his opinion that it has become a time-honored rule of law not to disturb his finding when there is any legally sufficient evidence to justify the verdict. The question here is not what we think the verdict should have been, but was there any evidence before the jury sufficient in law to warrant the verdict as it is? When brought down to this point, it is impossible for us to say that there was no evidence to support the verdict. Other questions were presented in the motion for new trial, and not abandoned in the presentation on oral argument, and we have examined them, but find nothing in them to constitute reversible error.

The judgment is affirmed.